IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　Plaintiff,<br><br>v.<br><br>ALEXANDER JON OGILVIE,<br><br>　　　　　　Defendant. | **ORDER AND MEMORANDUM DECISION DENYING MOTION TO DISMISS**<br><br>Case No. 2:23-cr-00063-TC<br><br>Judge Tena Campbell |

Defendant Alexander Jon Ogilvie is charged in a one-count Indictment with Illegal Receipt of a Firearm by a Person under Indictment in violation of 18 U.S.C. § 922(n). (Indictment, ECF No. 1.) Mr. Ogilvie moves to dismiss the Indictment on the ground that § 922(n) violates the Second Amendment. (Mot. Dismiss, ECF No. 35.) For the following reasons, the court denies the motion.

## BACKGROUND

Mr. Ogilvie has a history of charges and convictions related to firearms. On January 21, 2018, he was "adjudicated for a felony discharge of a firearm, a second degree felony …." (Information in Case No. 221906180, Utah 3rd Dist. Ct.) Although Mr. Ogilvie was a minor at the time, "the crime would have been a felony if [it had been] committed by an adult …." Id. Mr. Ogilvie was therefore deemed a Category I restricted person under Utah law. See Utah Code Ann. § 76-10-503(1)(a)(iv). In Utah, it is a second-degree felony for a Category I

1

restricted person "to purchase, transfer, possess, use, or have under the person's custody or control" a firearm.  Utah Code Ann. § 76-10-503(2)(a).

On April 10, 2022, police discovered Mr. Ogilvie with a gun and the State charged him with one count of Possession of a Dangerous Weapon by a Restricted Person.  (See Information in Case No. 221906180.)  On June 28, 2022, the Office of the Salt Lake County District Attorney issued a Summons for Mr. Ogilvie that ordered him to appear for arraignment on July 26, 2022.  (See Summons in Case No. 221906180.)

On October 22, 2022, officers from the Salt Lake City Police Department heard multiple gunshots and, upon investigation, discovered significant damage to a vehicle that had been struck by multiple bullets.  (Pretrial Services Report 1, ECF No. 8.)  They also determined that a bullet had been fired through the window of an apartment.  (Id.)  The police officers found Mr. Ogilvie and two other people on the roof of a nearby parking garage.  (Id.)  During a search, the officers found a Taurus 9-mm handgun in Mr. Ogilvie's waistband.  (Id.)  Additional investigation revealed that the gun had been purchased from Xtreme Pawn on July 26, 2022—the same date on which Mr. Ogilvie appeared in state court for his arraignment in the previous case.

Based on the events of October 22, 2022, Mr. Ogilvie now faces several charges in state court (one count of Possession of a Dangerous Weapon by a Restricted Person and five counts of Felony Discharge of a Firearm).  (See Information in Case No. 231903301, Utah 3rd Dist. Ct.)  In addition, a Grand Jury sitting in the District of Utah returned the indictment in this case, charging Mr. Ogilvie with one count of Illegal Receipt of a Firearm by a Person under Indictment in violation of 18 U.S.C. § 922(n).

## ANALYSIS

The statute prohibiting receipt of a firearm by a person under indictment provides as

follows:

> It shall be unlawful for any person who is under indictment for a crime punishable by imprisonment for a term exceeding one year to ship or transport in interstate or foreign commerce any firearm or ammunition or receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

18 U.S.C. § 922(n).  The United States alleges that Mr. Ogilvie purchased the Taurus 9-mm handgun that the police discovered on October 22, 2022, on July 26, 2022—the same date as Mr. Ogilvie's arraignment for a previous indictment, and after Mr. Ogilvie was aware that he was under indictment.  Mr. Ogilvie now argues that § 922(n) violates the Second Amendment.

The Second Amendment provides: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II.  In 2008, the Supreme Court clarified that this Amendment "guarantee[d] the individual right to possess and carry weapons in case of confrontation."  District of Columbia v. Heller, 554 U.S. 570, 591 (2008).  The Court then held that the Fourteenth Amendment incorporated this right against the States.  McDonald v. City of Chicago, 561 U.S. 742 (2010).

In New York State Rifle & Pistol Association, Inc. v. Bruen, the Supreme Court evaluated the constitutionality of New York's firearm licensing regime, and in doing so rejected the two-step means-end test that the Courts of Appeal had "coalesced around" for analyzing Second Amendment challenges in the years since the Court's decisions in Heller and McDonald. 597 U.S. 1, 17 (2022).  Rejecting the means-end test as involving "one step too many," the Court laid out the proper inquiry: "[T]he government must affirmatively prove that its firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms." Id. at 19.  This test "requires courts to assess whether modern firearms regulations are consistent with the Second Amendment's text and historical understanding." Id. at 26.  The

3

Court explained the analysis that a court should undertake as follows:

> When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation. Only then may a court conclude that the individual's conduct falls outside the Second Amendment's "unqualified command."

Id. at 24 (quoting Konigsberg v. State Bar of Cal., 366 U.S. 36, 50 n.10 (1961)).

## I. The Second Amendment's Plain Text Covers Mr. Ogilvie's Conduct

To apply the Bruen test, the court first considers whether the Second Amendment's plain text covers Mr. Ogilvie's conduct. This court has previously found that "the people" protected by the Second Amendment includes citizens who have committed felonies. United States v. Carrero, 635 F. Supp. 3d 1210, 1212 (D. Utah 2022); see also United States v. Espinoza-Melgar, 687 F. Supp. 3d 1196, 1201–02 (D. Utah 2023) (finding that the phrase "the people" should be read similarly throughout the Constitution and that felons and other non-law-abiding citizens still enjoy the protections of, for instance, the First and Fourth Amendments). The court therefore agrees with Mr. Ogilvie that "the Constitution presumptively protects [his] conduct." Bruen, 597 U.S. at 24.

## II. Section 922(n) Is Consistent with the Nation's Historical Traditions of Firearm Regulation

If the plain text of the Second Amendment protects the conduct being regulated, the government bears the burden to show that the prohibition at issue is "consistent with the Nation's historical tradition of firearm regulation." Id. at 24. This inquiry is straightforward in some cases, but in others will "involve reasoning by analogy[.]" Id. at 28. Such reasoning should be "neither a regulatory straightjacket nor a regulatory blank check." Id. at 30. The government must identify a "well-established and representative historical analogue, not a historical twin."

4

Id.  The Court did not provide "an exhaustive survey of the features that render regulations relevantly similar under the Second Amendment," but the Court did note that "Heller and McDonald point[ed] toward at least two metrics: how and why the regulations burden a law-abiding citizen's right to armed self-defense."  Id. at 29.  The Court reiterated, as it had emphasized in both Heller and McDonald, that individual self-defense was the central component of the Second Amendment right.  Id.  "Therefore, whether modern and historical regulations impose a comparable burden on the right of armed self-defense and whether that burden is comparably justified are 'central' considerations when engaging in an analogical inquiry."  Id. (quoting McDonald, 561 U.S. at 767).

The United States points to two examples to demonstrate that § 922(n) is consistent with the historical regulation of firearms: 1) colonial laws disarming groups of people perceived as dangerous; and 2) surety laws.  Mr. Ogilvie disputes that these examples are sufficiently analogous and argues that, prior to the enactment of the Federal Firearms Act (FFA) in 1938, 75 Cong. Ch. 850, § 2(d), 52 Stat. 1250, 1251 (repealed), there were no firearms restrictions for people under indictment.[1]

Since Bruen, federal district courts across the country have heard similar arguments about the constitutionality of § 922(n).  As Mr. Ogilvie notes, three courts have agreed with him that

---

[1] Mr. Ogilvie also notes that, as originally enacted, the FFA was limited to firearms restrictions for those under indictment for federal crimes of violence.  See id.  It was only in 1961 that Congress expanded the reach of the FFA to include those under indictment for all federal felony offenses, see Act of Oct. 3, 1961, Pub. L. No. 87-342, 75 Stat. 757 (repealed), and only in 1968 that Congress expanded gun regulations further to cover those individuals (such as Mr. Ogilvie) who were indicted in state court as well as federal court, see Gun Control Act of 1968, Pub. L. 90-618, 82 Stat. 1213, 1216 (codified at 18 U.S.C. § 921 et seq.).

5

§ 922(n) violates the Second Amendment.[2]  In contrast, a robust majority of courts have upheld § 922(n), finding that restrictions on the purchase and shipment of guns by persons under indictment are consistent with the Nation's historical tradition of firearm regulation.[3]

This court agrees with the majority trend.  First, there is a long history of Congressional and state disarmament of people perceived as dangerous.  See, e.g., Heller, 554 U.S. at 626 ("[N]othing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill ….").  There is ample evidence that colonial and revolutionary-era laws disarmed groups of people based on perceptions that those groups were dangerous.  See, e.g., Adam Winkler, GUNFIGHT: THE BATTLE OVER THE RIGHT

---

[2] See United States v. Quiroz, 629 F. Supp. 3d 511, 527 (W.D. Tex. 2022); United States v. Hicks, 649 F. Supp. 3d 357, 366 (W.D. Tex. 2023); United States v. Stambaugh, 641 F. Supp. 3d 1185, 1193 (W.D. Okla. 2022).  A court in the Northern District of Indiana also found § 922(n) unconstitutional, see United States v. Holden, 638 F. Supp. 3d 931, 940 (N.D. Ind. 2022), but—as discussed further below—that decision was overturned by the Seventh Circuit.  See United States v. Holden, 70 F.4th 1015, 1018 (7th Cir. 2023).

[3] See United States v. Kays, 624 F. Supp. 3d 1262, 1268 (W.D. Okla. 2022); United States v. Kelly, No. 3:22-CR-37, 2022 WL 17336578, at *3 (M.D. Tenn. Nov. 16, 2022); United States v. Bartucci, 658 F. Supp. 3d 794, 808 (E.D. Cal. 2023); United States v. Rowson, 652 F. Supp. 3d 436, 472 (S.D.N.Y. 2023); United States v. Gore, No. 2:23-CR-04, 2023 WL 2141032, at *4 (S.D. Ohio Feb. 21, 2023); United States v. Stennerson, No. CR-22-139, 2023 WL 2214351, at *2 (D. Mont. Feb. 24, 2023); United States v. Jackson, 661 F. Supp. 3d 392, 414 (D. Md. 2023); United States v. Posada, 670 F. Supp. 3d 402, 411 (W.D. Tex. 2023); Alexander v. United States, 686 F. Supp. 3d 608, 624 (W.D. Mich. 2023); United States v. Simien, 655 F. Supp. 3d 540, 552 (W.D. Tex. 2023); United States v. Fabiano, No. 2:23-CR-1, 2023 WL 9597783, at *9 (N.D. Ga. Nov. 21, 2023), adopted by 2024 WL 196480 (N.D. Ga. Jan. 17, 2024); United States v. Trevino, No. 2:23-CR-66, 2023 WL 8237053, at *1 (D.N.M. Nov. 28, 2023); United States v. Now, No. 22-CR-150, 2023 WL 2717517, at *9 (E.D. Wis. Mar. 15, 2023), adopted by 2023 WL 2710340 (E.D. Wis. Mar. 30, 2023); United States v. Adger, No. CR 122-102, 2023 WL 3229933, at *3 (S.D. Ga. May 3, 2023), adopted by 2023 WL 3627840 (S.D. Ga. May 24, 2023); United States v. Alston, No. 5:23-CR-021, 2023 WL 7003235, at *2 (E.D.N.C. Oct. 24, 2023); United States v. Baker, No. CR-23-130, 2024 WL 24088, at *6 (W.D. Okla. Jan. 2, 2024); United States v. Slone, No. 5:22-CR-144, 2023 WL 8037044, at *6 (E.D. Ky. Nov. 20, 2023); United States v. Brown, No. 5:23-CR-12, 2024 WL 1773991 (M.D. Ga. Apr. 24, 2024); United States v. Rogers, No. 5:22-CR-717, 2024 WL 692701, at *9 (N.D. Ohio Feb. 20, 2024); Rangel-Ramirez v. United States, No. 4:22-CV-829, 2024 WL 1543764, at *14 (N.D. Tex. Apr. 9, 2024) (denying a motion to vacate sentence under 28 U.S.C. § 2255 after finding § 922(n) constitutional).

TO BEAR ARMS IN AMERICA 115–16 & accompanying notes (2013) (citing laws barring gun sales to Native Americans, free and enslaved Black and mixed-race persons, and Catholics or Loyalists due to fears of violence and potential rebellion); Waters v. State, 1 Gill 302, 309 (Md. 1843) (stating that, because free Black persons were treated as a "dangerous population, … laws have been passed to … make it unlawful for them to bear arms").

Two courts that have overturned § 922(n) have found that these regulations were unpersuasive examples of the Nation's historical tradition of firearm regulation, arguing that such laws were themselves unlawful disarmaments in violation of the Second Amendment. See United States v. Quiroz, 629 F. Supp. 3d 511, 525 (W.D. Tex. 2022); United States v. Hicks, 649 F. Supp. 3d 357, 363–64 (W.D. Tex. 2023). But having construed "the people" broadly at the first step of the Bruen inquiry to include people convicted of or accused of crimes, the court declines to construe "the people" narrowly at the second stage of the inquiry by restricting its analysis of historical regulations only to those laws affecting the rights of white, male landowners. Founding-era lawmakers made categorical assessments about the potential danger posed by groups of people on the basis of their religious, racial, and political identities—assessments that are odious by modern eyes and would doubtlessly be found unconstitutional today. But these regulations "are telling about what was understood as the scope of the Second Amendment during the period leading up to 1791." United States v. Bartucci, 658 F. Supp. 3d 794, 804 (E.D. Cal. 2023).

Second, the court agrees with the United States that surety laws are examples of the historical regulation of firearms that provide a relevant comparison to § 922(n). Surety laws "required persons deemed likely to breach the peace or otherwise transgressive to post a bond before publicly carrying a firearm." Rowson, 652 F. Supp. 3d at 467. Colonial surety laws

"derived from a longstanding English tradition of authorizing government agents to seize arms from persons who had acted unlawfully or in a manner that threatened the public." Id. at 467–69 (collecting surety laws passed in the colonies and states from 1692 to 1821[4]). "Like their predecessors, these laws empowered justices of the peace to apprehend those who were publicly armed and presented offensively." Id. at 469.

Mr. Ogilvie argues that surety laws are not comparable to § 922(n) because these laws only limited public carry, provided for the carrier to post bond, and were limited to individuals found to pose a specific threat. See United States v. Stambaugh, 641 F. Supp. 3d 1185, 1192 (W.D. Okla. 2022) ("[A] person accused under a surety law could post a bond and continue to carry their firearm in public…. In contrast, Section 922(n) provides no self-defense exception …."). But § 922(n) is arguably less restrictive than surety laws. The statute does not forbid a person under indictment from possessing—or publicly carrying—a gun. Instead, "it simply limits an individual's right to receive a firearm during the pendency of an indictment." United States v. Kays, 624 F. Supp. 3d 1262, 1268 (W.D. Okla. 2022). While a person under indictment—who does not already own a gun and who is not in pretrial detention—might conceivably face a need for self-defense that arises while the indictment remains pending, such situations would be comparatively rare. Certainly Mr. Ogilvie has not demonstrated any need for self-defense that required him to purchase a gun on the day of his arraignment—an arraignment for a charge of unlawful possession of a firearm, no less. And courts have found that the period when an indictment is pending is "a volatile period during which the stakes and stresses of

---

[4] The Supreme Court has not decided whether courts should rely more heavily on the public understanding of the scope of an individual right in 1791—when the Bill of Rights was enacted—or in 1868—when the Fourteenth Amendment was ratified. See Bruen, 597 U.S. at 38 (declining to address the issue because the understanding of public carry laws was similar in 1791 and 1868). For the purposes of this order, the court has relied on colonial and founding-era regulations.

pending criminal charges often motivate defendants to do violence to themselves or others." United States v. Khatib, No. 12-CR-190, 2012 WL 6086862, at *4 (E.D. Wis. Dec. 6, 2012), adopted by 2012 WL 6707199 (E.D. Wis. Dec. 26, 2012); see also United States v. Laurent, 861 F. Supp. 2d 71, 102 (E.D.N.Y. 2011) ("[I]f the individual only received a gun after indictment, this conduct raises the suspicion that his purpose is not self-defense in the home, but further crime." (emphasis added)).

Similar to surety laws, then, § 922(n) provides a limited restriction on the right to self-defense, and that restriction is the result of a finding that individuals under indictment pose a potential threat. The modern and historical regulations therefore "impose a comparable burden on the right of armed self-defense and … that burden is comparably justified …." Bruen, 597 U.S. at 29.

Third, the court finds the lack of historical regulations restricting the Second Amendment rights of people under indictment is not dispositive because the public safety threat posed by pretrial indictees was substantially different during the founding era. For one, "bail was not available for many crimes that were then treated as capital offenses but which today would be treated as felonies within § 922(n)'s scope." Rowson, 652 F. Supp. 3d at 470. Moreover, the time from indictment to trial was generally much shorter. In any event, the government has always been able to impose "substantial liberty restrictions" on indicted defendants (including detention or, alternatively, conditions of pretrial release) when needed to promote "the operation of our criminal justice system." United States v. Salerno, 481 U.S. 739, 749 (1987). For instance, 18 U.S.C. § 3142(c)(1)(B)(viii) allows a federal court to order a person on federal pretrial release to "refrain from possessing a firearm, destructive device, or other dangerous weapon" if needed to "reasonably assure the appearance of the person as required and the safety

of any other person and the community …." Although this provision requires a more individualized assessment than § 922(n), is it also an absolute ban on the possession of firearms during the pretrial period. Since Bruen, courts have upheld this disarmament provision as consistent with historical tradition. See, e.g., United States v. Slye, No. 1:22-mj-144, 2022 WL 9728732, at *2–3 (W.D. Penn. Oct. 6, 2022) (explaining that "[i]t would be illogical to conclude" that a court has the authority to detain an indicted defendant, thereby denying him many constitutional rights, "but lacks the authority to impose far less severe restrictions, such as ordering his release on bond with a firearms restriction").

Finally, the court makes two observations specific to Mr. Ogilvie's case. First, the court recognizes that some defendants—such as those indicted for a nonviolent felony—might raise stronger arguments that § 922(n) is unconstitutional as applied to the facts in their case. But Mr. Ogilvie has shown himself to be a dangerous person specifically when it comes to the misuse of firearms. It is undisputed that Mr. Ogilvie was adjudicated for a felony discharge of a firearm that occurred on January 21, 2018—when Mr. Ogilvie was 16—, a crime which would have been a felony if committed by an adult. Due to this offense, Mr. Ogilvie was barred from possession of a firearm under Utah law—a restriction that he does not contest in this proceeding.[5] It is similarly undisputed that the state felony information that served as the predicate for Mr. Ogilvie's federal § 922(n) prosecution was for unlawful possession of a firearm by a restricted person. Given his criminal history, Mr. Ogilvie poses exactly the sort of public safety threat which Congress and the states have historically attempted to mitigate by restricting access to firearms.

Second, the court acknowledges that an indictment involves fewer procedural safeguards

---

[5] Mr. Ogilvie has not argued that the Utah state law prohibiting him from possessing a gun violates the Second Amendment.

than a trial. As one court that invalidated § 922(n) noted, a grand jury "is not an adversarial proceeding." Quiroz, 629 F. Supp. 3d at 521. The court agrees that § 922(n) does not even require the decision of a grand jury, as not all states utilize grand juries in their indictment proceedings and, more importantly, an "indictment" for the purposes of the federal statute includes "an indictment or information in any court under which a crime punishable by imprisonment for a term exceeding one year may be prosecuted." 18 U.S.C. § 921(a)(14) (emphasis added). Here, for instance, Mr. Ogilvie was prosecuted by the State of Utah on an information. But Mr. Ogilvie has not raised a due process challenge concerning the information that serves as the predicate for his offense. He has not argued, for instance, that there was no probable cause to support the information. Without holding that the non-adversarial nature of a state indictment or information could never be relevant to an inquiry about the scope of the Second Amendment, the court finds that such considerations have not been appropriately raised here.

### III. The Constitutionality of § 922(n) Is Supported by Precedent

Without the expertise of an impartial historian on staff, the court runs the risk of cherry-picking the historical record. See United States v. Kelly, No. 3:22-CR-37, 2022 WL 17336578, at *3 (M.D. Tenn. Nov. 16, 2022) ("[I]t is undeniable that federal courts typically 'lack both the methodological and substantive knowledge that historians possess.'" (quoting United States v. Bullock, No. 3:18-CR-165, 2022 WL 16649175, at *1 (S.D. Miss. Oct. 27, 2022))). Indeed, as discussed above, courts have disagreed about the relevance of the historical record as it applies to § 922(n). Moreover, the court does not have the time or resources to ensure that its survey of historical analogues is complete. But the court does have expertise in analyzing and applying binding and persuasive precedent—and a survey of higher court opinions supports the court's

11

finding that § 922(n) is constitutional.

Circuit courts have not yet considered the issue de novo but have nevertheless upheld convictions under 922(n) post-Bruen, finding no plain error where the issue was raised for the first time on appeal. See, e.g., United States v. Avila, No. 22-50088, 2022 WL 17832287, at *2 (5th Cir. Dec. 21, 2022) ("There is no binding precedent holding § 922(n) unconstitutional."); United States v. Yancey, No. 23-1651, 2024 WL 317636, at *2 (8th Cir. Jan. 29, 2024) ("[The defendant] points to no controlling authority holding that § 922(n) violates the Second Amendment, and there is reasonable dispute in other courts concerning whether the Second Amendment protects the right for someone under felony indictment to carry a weapon.").

The Seventh Circuit has considered the constitutionality of § 922(n) obliquely. In United States v. Holden, the Seventh Circuit reversed a district court's decision that dismissed an indictment on the grounds that § 922(n) was unconstitutional. 70 F.4th 1015, 1018 (7th Cir. 2023). The defendant had pled guilty to a violation of 18 U.S.C. § 922(a)(6), which makes it a crime to deceive a gun dealer by making a false statement "with respect to any fact material to the lawfulness of the sale …." Holden, 70 F.4th at 1016 (quoting 18 U.S.C. § 922(a)(6)). The false statement to which the defendant had pled guilty concerned whether he was "under indictment or information" for any crime punishable by imprisonment for a year or more—in other words, conduct that is criminalized under § 922(n). Id. The district judge granted the defendant's motion to withdraw his guilty plea and dismissed the indictment, ruling that § 922(n) violated the Second Amendment. United States v. Holden, 638 F. Supp. 3d 931, 940 (N.D. Ind. 2022). But the Seventh Circuit held that the constitutionality of § 922(n) was not properly before the court, as "a truthful answer to the question 'are you under indictment?' can be material to the propriety of a firearms sale, whether or not all possible applications of § 922(n) comport with the

Second Amendment." Id. at 1018.

While careful to avoid any ruling about whether § 922(n) was constitutional, the Seventh Circuit noted that "neither the Supreme Court nor any court of appeals has deemed § 922(n) void.... Nor is it likely that § 922(n) would be held invalid across the board." Id. at 1017. Relevant to Mr. Ogilvie's background, the Seventh Circuit made the following observations:

> Governments may keep firearms out of the hands of dangerous people who are apt to misuse them. Bruen, 142 S. Ct. at 2131 (Second Amendment protects "law-abiding, responsible citizens"), 2148–50 (discussing surety laws), 2162 (Kavanaugh, J., concurring). Even if some applications of § 922(n) would flunk the constitutional standard (say, someone under indictment for an antitrust offense), others might illustrate the sort of person who cannot be trusted with guns (say, someone under indictment for using violence against a domestic partner).

Id. at 1017–18. As discussed above, Mr. Ogilvie has shown that he is apt to misuse firearms. It is therefore unlikely that the Seventh Circuit would find § 922(n) unconstitutional as applied to Mr. Ogilvie.

Finally, and most relevantly for this court, the Tenth Circuit has recently denied a Bruen challenge to the constitutionality of 18 U.S.C. § 922(g)(1), which prohibits felons (even those convicted of a nonviolent crime) from possessing firearms. Vincent v. Garland, 80 F.4th 1197, 1202 (10th Cir. 2023). The Tenth Circuit found that nothing in Bruen "appear[ed] to question the constitutionality of longstanding prohibitions on possession of firearms by convicted felons." Id. at 1201. Following the Tenth Circuit's lead, this court similarly finds that nothing in Bruen appears to question the constitutionality of longstanding prohibitions on the receipt (but not possession) of firearms by individuals who have been indicted (but not convicted) for a felony.

## CONCLUSION

The government has not provided an exact replica of a historical regulation preventing people under indictment from buying a gun, and this lack has led some district courts to

13

invalidate § 922(n).  But a substantial majority of courts have found this prohibition analogous to a longstanding historical tradition of restricting firearms access to potentially dangerous people. Mr. Ogilvie, who is not allowed to possess a gun at all under Utah state law, has not shown that § 922(n) violates his Second Amendment rights.  Accordingly, the court denies his motion to dismiss.

## ORDER

For the reasons stated above, the court ORDERS as follows:

1. The Defendant's Motion to Dismiss (ECF No. 35) is DENIED.

2. The court has set a new trial date for June 10, 2024, and finds that the time from the Defendant's previous trial date of February 20, 2024, to his new trial date of June 10, 2024, should be excluded under the Speedy Trial Act due to the need for the court to rule on the Defendant's motion.  See 18 U.S.C. § 3161(h)(7)(B)(iv).  The ends of justice served by such a continuance outweigh the best interest of the public and the Defendant in a speedy trial.

DATED this 31st day of May, 2024.

BY THE COURT:

_____
Tena Campbell
United States District Judge