TRINA A. HIGGINS, United States Attorney (#7349)
SIRENA MILLER WISSLER, Assistant United States Attorney (#7450)
Attorneys for the United States of America
Office of the United States Attorney
111 South Main Street, Suite 1800
Salt Lake City, Utah 84111-2176
Telephone: (801) 524-5682
Sirena.Wissler@usdoj.gov

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　Plaintiff,<br><br>v.<br><br>ALEXANDER JON OGILVIE,<br><br>　　　　　　Defendant. | Case No.  2:23 CR 0063<br><br>GOVERNMENT'S POSITION ON SENTENCING FACTORS AND MOTION FOR DOWNWARD VARIANCE<br><br>Judge Tena Campbell |

COMES NOW the Plaintiff, United States of America, through its attorneys Trina A. Higgins, United States Attorney for the District of Utah and Sirena Miller Wissler, Assistant United States Attorney for said District, and submits it Position on Sentencing Factors and Motion for Downward Variance.

STATEMENT OF RELEVANT FACTS

On February 15, 2023, a duly empaneled Grand Jury sitting in the District of Utah returned an Indictment against Alexander Jon Ogilvie ("Mr. Ogilvie"), charging one count

1

of Receipt of a Firearm by a Person Under Indictment in violation of Title 18, United States Code, Section 922(n). (ECF 1). Mr. Ogilvie made his initial appearance before United States Magistrate Judge Daphne A. Oberg on March 10, 2023. (ECF 4). The United States had sought a writ of habeas corpus ad prosequendum to secure Mr. Ogilvie's attendance, as Mr. Ogilvie was believed to be jailed awaiting trial on two cases in Third District Court in and for Salt Lake County, Utah. (ECF 7). However, the United Staes then learned that Mr. Ogilvie's State cases had been dismissed after his attorney falsely advised the Third District Court and District Attorney's Office that the instant case charged the same conduct as one of his two state cases.[1] After learning it had been misled, the Salt Lake County District Attorney's Office re-filed the two State cases against Mr. Ogilvie. Those cases remain pending.

On or about January 8, 2024, Magistrate Judge Daphne A. Oberg ordered Mr. Ogilvie's release revoked following a hearing at which Mr. Ogilvie admitted to 4 of 5 allegations that he had violated the terms and conditions of his pre-trial release. (ECF 29). Among the admissions were that Mr. Ogilvie had failed to submit to drug/alcohol testing as directed; that he had failed to report a law enforcement contact; that he had failed to abide by his curfew; and that he had used alcohol. After concluding that Mr. Ogilvie was unlikely to abide by the conditions of release, Magistrate Judge Oberg ordered him detained. (ECF 30).

---

[1] The attorney who made that false representation is not the same attorney that represents Mr. Ogilvie in the instant case.

Mr. Ogilvie filed a Motion to Dismiss the instant case (ECF 35), to which the United States responded. (ECF 36). This Court ultimately denied the motion. (ECF 41). Following the denial of the motion, Mr. Ogilvie entered a conditional guilty plea, the terms of which allow Mr. Ogilvie to appeal this Court's denial of the motion to dismiss. (ECF 44). Mr. Ogilvie now appears before the Court for sentencing.

## GOVERNMENT'S POSITION WITH REGARD TO SENTENCING FACTORS

### I. The Total Offense Level

The United States Probation Office has concluded that Mr. Ogilvie's Total Offense Level is Level 15. (PSR, ¶ 29). That total includes a four-level enhancement pursuant to Section 2K2.1(b)(6)(B), because Mr. Ogilvie possessed the firearm in question in connection with another felony offense. (PSR, ¶ 21). It also includes a reduction pursuant to Section 3E1.1(b), commonly referred to as "acceptance of responsibility." (PSR, ¶ 28). The United States submits that these adjustments were appropriately applied and agrees that the Probation Office has correctly calculated Mr. Ogilvie's Total Offense Level.

### II. Mr. Ogilvie's criminal history

Mr. Ogilvie was assessed three criminal history points. (PSR, ¶ 41). The first of Mr. Ogilvie's criminal history points arose out of a Juvenile Court proceeding occurring when Mr. Ogilvie was only 16 years of age. (PSR, ¶ 31). In that instance, Mr. Ogilvie was adjudicated for Shooting in the Direction of a Person, a Second Degree Felony. (PSR ¶ 31). Because that incident occurred within five years of the commission of the offense in the instant case, Mr. Ogilvie was properly assessed one criminal history point pursuant to Section 4A1.2(d)(2)(A).

Mr. Ogilvie also received criminal history points for Impaired Driving (PSR ¶ 24) and Possession of a Controlled Substance (PSR ¶ 35). The United States suggests these points were appropriately assessed and that the Probation Office has correctly calculated Mr. Ogilvie's criminal history score and category.

### III. A sentence of 27 months would be substantively reasonable and would achieve the statutory objectives of sentencing.

According to the United States Probation Office, Mr. Ogilvie's advisory sentencing range is 21-27 months. (PSR ¶ 64).

It is axiomatic that

> The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider--
> **(1)** the nature and circumstances of the offense and the history and characteristics of the defendant;
> **(2)** the need for the sentence imposed--
> **(A)** to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> **(B)** to afford adequate deterrence to criminal conduct;
> **(C)** to protect the public from further crimes of the defendant; and
> **(D)** to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
> **(3)** the kinds of sentences available;
> **(4)** the kinds of sentence and the sentencing range established for--
> **(A)** the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines--
> **(i)** issued by the Sentencing Commission pursuant to section 994(a)(1) of title 28, United States Code, subject to any amendments made to such guidelines by act of Congress (regardless of whether such amendments have yet to be

> incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and
> **(ii)** that, except as provided in section 3742(g), are in effect on the date the defendant is sentenced; or
> **(B)** in the case of a violation of probation or supervised release, the applicable guidelines or policy statements issued by the Sentencing Commission pursuant to section 994(a)(3) of title 28, United States Code, taking into account any amendments made to such guidelines or policy statements by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28);
> **(5)** any pertinent policy statement--
> **(A)** issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28, United States Code, subject to any amendments made to such policy statement by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and
> **(B)** that, except as provided in section 3742(g), is in effect on the date the defendant is sentenced.[1]
> **(6)** the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
> **(7)** the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553. In the government's view, a sentence of 27 months, which rpresents the high end of the advisory sentencing range, would achieve the statutory objectives of sentencing.

> a. *The nature and circumstances of the offense and history and characteristics of the defendant.*

It seems indisputable that the offense to which Mr. Ogilvie pled guilty was a serious one. He admitted to acquiring a firearm, knowing that he was under indictment for a felony offense. In evaluating he seriousness of the offense, the government submits that it is crucial to view it in its full and proper context.

5

In June 2022, Mr. Ogilvie was charged in Third District Court in and for Salt Lake County, Utah with Possession of a Dangerous Weapon by a Restricted Person. (Case number 221906180). The probable cause statement filed in connection with that charge alleged that on April 10, 2022, a Unified Police Department Officer was on patrol near the Magna Recreation Center (which was closed at the time) when he observed Mr. Ogilvie and a female in the back seat of a parked car. After running records checks on Mr. Ogilvie, the officer learned that Mr. Ogilvie had gang ties and previous incidents involving firearms. Mr. Ogilvie then advised the officer that he had a gun under the front passenger seat. During a search, the officer recovered a loaded Glock 17 containing hollow point ammunition. Mr. Ogilvie was a restricted person under State law, by virtue of his 2018 juvenile adjudication for Shooting at a Person, which would have been a Second Degree Felony if committed by an adult, and because it had been committed with in the previous 7 years.

Mr. Ogilvie was served a summons to appear in Third District Court. More specifically, he was ordered to appear on July 26, 2022. According to the docket in Third District Court case number 221906180, Mr. Ogilvie did, in fact, appear in court on that date. On the *very same date*, a person whose identity is known to the parties purchased a Taurus model G2S, 9 mm handgun bearing serial number ADD188697 from Xtreme Pawn in West Jordan, Utah.

On October 22, 2022, Salt Lake City Police officers responded to a "shots fired" call in the area of Main Street and 300 South. While en route, they heard additional shots fired. One of the responding officers saw two males, one of whom was later identified as

Mr. Ogilvie, running from the area and into a parking structure. Mr. Ogilvie was detained on the top floor of the parking structure and discovered to be in possession of a Taurus G2S, 9 mm handgun bearing serial number ADD188697 – the very gun that had been purchased from Xtreme Pawn on July 26, 2022. The firearm contained an empty magazine. In a post-Miranda statement, Mr. Ogilvie told police that he had fired 6 rounds from the Taurus G2S at a group of people whom Mr. Ogilvie alleged were "following" him. (PSR ¶ 13).

Based upon the date of purchase of the Taurus G2S, Mr. Ogilvie *could not have obtained* it until *after* he had appeared in Third District Court in connection with case number 221906180. Mr. Ogilvie was subsequently charged in Third District Court in and for Salt Lake County, Utah with 6 counts of Felony Discharge of a Firearm and 1 count of Possession/Use of a Firearm by a Restricted Person for the October 2022 shooting. Although the case was initially dismissed based upon a misrepresentation by his attorney, it has been re-filed and remains pending.

Mr. Ogilvie is currently 23 years old. Despite his young age, he has been charged with three separate adult felonies (including the instant case), all of which involve firearms. These offenses come on the heels of a juvenile adjudication also involving a firearm. In at least two of these instances, Mr. Ogilvie has not merely *possessed* a firearm, he *used* that firearm to shoot at people. Clearly, Mr. Ogilvie is non-plussed by State prosecutions, as he went so far as to acquire a firearm immediately after appearing in court in connection with a serious felony offense in State court. He later used that firearm to fire 6 rounds at a "group" of people, resulting in still more charges.

While one would hope (and perhaps even assume) that being charged in Federal Court with a serious felony offense would serve as a sufficient "wake-up call" to Mr. Ogilvie, the instant case appears to have failed to make an impression. When afforded the privilege of pre-trial release, Mr. Ogilvie failed to abide by the conditions of release. Instead, he ignored his curfew and was ultimately stopped by police with an open container of alcohol in his vehicle.

Against this backdrop, it is important to recall that Mr. Ogilvie has himself been shot. (PSR ¶ 51). Although the Pre-Sentence Investigation Report does not elaborate on the circumstances of the shooting, the undersigned is familiar with the incident. In June 2022, Mr. Ogilvie was shot in a gang-related shooting that arose from a group of gang members being removed from a private party. A person standing in close proximity to Mr. Ogilvie at the time of the shooting was killed. Approximately seven weeks later, Mr. Ogilvie acquired the Taurus G2S that gave rise to the charge in the instant case.

Despite Mr. Ogilvie's wretched behavior, he apparently still enjoys the support of his family. Although Mr. Ogilvie's parents are divorced, his mother has been involved in a relationship for approximately 10 years. Mr. Ogilvie describes his relationship with his mother's partner (who is also Mr. Ogilvie's uncle) as "good." Mr. Ogilvie also described a "close" relationship with his seven half-siblings (with one exception). Mr. Ogilvie's mother welcomed him back into her home when he was released pre-trial, and she apparently seems willing to do so again.

Nothing in the Pre-Sentence Investigation Report suggests that Mr. Ogilvie was ever subjected to abuse or neglect. He denies any physical or mental health difficulties. He

cites marijuana use beginning at age 14, with his use described as "occasionally" until after his child was born, at which time Mr. Ogilvie's marijuana use *increased* to "daily."

Mr. Ogilvie dropped out of high school in 11th grade in a decision that was apparently completely voluntary. (PSR ¶ 56). He expresses interest in obtaining his GED; however, the United States has discerned no reason why Mr. Ogilvie could not have done so already, given that he is 23 years old and the father of a young child.

It seems abundantly clear that Mr. Ogilvie stands at a crossroads. He has engaged in behavior that will remove him from his child's life during these early formative years, much as his own father was removed from his. He cannot change the past or avoid the repercussions of his actions. Mr. Ogilvie can choose to continue down the path that he appears to have chosen, or he can diverge from that path and be the "great father" that his son deserves. In the meantime, however, he must face the consequences of his many poor (and criminal) decisions. Nothing in Mr. Ogilvie's past or his behavior on pre-trial release gives the United States any confidence that Mr. Ogilvie truly wants to reject the life he has chosen so far.

> b. *The need for the sentence to reflect the seriousness of the offense, promote respect for the law, afford adequate deterrence, and protect the public.*

To reiterate, Mr. Ogilvie's offense was undeniably a serious one. He has a significant (and highly troubling) history of firearms offenses and is rightfully prohibited from possessing firearms as a result. Still, he persists. His refusal to comply with relatively minimal conditions while on pre-trial supervision speaks volumes, in the government's view, of Mr. Ogilvie's lack of respect for the law. The United States is not at all satisfied

that Mr. Ogilvie appreciates the dangerous criminal nature of his behavior and the risk it poses, not only to the community, but to his family, himself, and his liberty. In the United States' view, a sentence of 27 months, which represents the *high* end of the advisory sentencing range – is sufficient, but certainly not greater than necessary, to achieve the statutory objectives of sentencing. To the contrary, as sentence of less than 27 months would fail to reflect the serious nature of the offense (in light of Mr. Ogilvie's recidivism) and would fail to provide adequate deterrence to future criminal conduct. Perhaps most importantly, the government submits that the public fairly expects that they will be protected from individuals like Mr. Ogilvie, who has persistently possessed and used firearms beginning as a juvenile.

Because Mr. Ogilvie has demonstrated an unwillingness or inability to follow the conditions of supervision, the United States respectfully requests that the Court impose the maximum statutorily allowed term of supervised release, understanding that Mr. Ogilvie would have the opportunity to petition for early termination if he were to demonstrate a period of success.

    c.    *The need to avoid unwarranted sentencing disparities.*

In imposing a sentence, the Court must endeavor to avoid unwarranted sentencing disparities. The United States submits that a sentence of 27 months, which is within the advisory range, would not result in a prohibited disparity. In fact, if Mr. Ogilvie's prior adjudication for Shooting in the Direction of a Person were an adult conviction, his criminal history score would have been higher and his Criminal History Category would likely have been IV, resulting in an advisory range of 24-30 months.

## **CONCLUSION**

Based upon the foregoing, the United States respectfully requests that the Court impose a sentence of 27 months, to be followed by a term of supervised release of 3 years.

Dated this 19th day of August, 2024.

        Respectfully submitted,

        TRINA A. HIGGINS
        UNITED STATES ATTORNEY


*/s/ Sirena Miller Wissler*
        SIRENA MILLER WISSLER
        ASSISTANT UNITED STATES ATTORNEY